## CHESAPEAKE & O. RY. CO. v. HAWKINS, Sheriff.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1911.)

No. 1,016.

1. RAILROADS (§ 376*)—INJURIES TO TRESPASSERS—CARE REQUIRED—INTENTIONAL INJURY.

In an action for injuries to a trespasser on a railroad right of way, plaintiff, in order to recover, is bound to show a want of ordinary care to avoid injury to him after his peril was discovered by the operatives of the train, but is not bound to show that his injury resulted from malicious or intentional wrongdoing on the part of such operatives.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

2. RAILROADS (§ 401*)—PERSONS ON RIGHT OF WAY—TRESPASSERS—DEATH—INSTRUCTIONS.

In an action for death of a trespasser on a railroad bridge in endeavoring to escape from an approaching engine, an instruction that the burden was on plaintiff to show that deceased was on the trestle, that he was discovered by the trainmen, and that, knowing he could not get off the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bridge in time to avoid injury, they willfully and recklessly injured him, was properly refused, as requiring too high a degree of proof, both in requiring proof that the trainmen knew that decedent could not get off the bridge in time to avoid injury, as well as that they willfully and recklessly injured him.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 401.*]

3. RAILROADS (§ 401*)—TRESPASSERS—DEATH—INSTRUCTIONS.

Where, in an action for death of a trespasser while attempting to escape from a railroad bridge in front of an approaching engine, the court charged that plaintiff was a trespasser and was negligent in being where he was, and that under such circumstances the operatives of the engine owed him no duty until they discovered him in peril, and then owed him the duty not to wantonly injure him, the court did not err in omitting from its general charge on the duty owed to decedent after his discovery by defendant's servants that they owed him no duty, except not to wantonly injure him.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 401.*]

4. RAILROADS (§ 391*)—TRESPASSERS ON BRIDGE—WANTON INJURY.

Defendant's engineer saw decedent walking over a railroad bridge in front of the engine when it was running only two or three miles an hour; and, while decedent ran and was endeavoring to get off the bridge before being overtaken, the engineer in a spirit of levity approached close to decedent, rang the bell, and blew the whistle expecting him to escape, and not anticipating that he would jump to the side of the track on insecure cinders at the end of the bridge, and fall to the rocks below, as he did. *Held*, that such conduct was wantonly negligent and a breach of the engineer's duty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1326–1330; Dec. Dig. § 391.*]

5. RAILROADS (§ 391*)—DEATH OF TRESPASSER—WILLFUL INJURY—KNOWLEDGE OF EMPLOYÉS.

Decedent, while trespassing on defendant's railroad bridge, was followed by an engine, the operatives of which, on seeing that he could not escape, followed close to him, blowing the whistle and ringing the bell, causing him to run to reach the opposite side, and, as he did so, he jumped to the side of the track on certain loose cinders, and, these giving way, caused him to fall on the rocks below. *Held* that, if the act of defendant's engineer was the proximate cause of decedent's death, defendant would not be relieved from liability by the fact that the engineer did not know that the embankment at the end of the bridge was insufficient to hold decedent's weight when he stepped on it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1326–1330; Dec. Dig. § 391.*]

6. RAILROADS (§ 386*)—TRESPASSERS—DEATH—CONTRIBUTORY NEGLIGENCE.

Decedent having made an honest effort to escape in a reasonably prudent way, performed the legal duty imposed on him, under the rule that persons in great peril are not required to exercise the care that would ordinarily be characteristic of a prudent man.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1295; Dec. Dig. § 386.*]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Huntington.

Action by E. B. Hawkins, sheriff and administrator of Samuel C. Delay, deceased, against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Simms, Enslow, Fitzpatrick & Baker, for plaintiff in error.

Dillon & Nuckolls and C. W. Osenton, for defendant in error.

Before PRITCHARD, Circuit Judge, and DAYTON and CONNOR, District Judges.

CONNOR, District Judge. This action was prosecuted by defendant in error, hereinafter called plaintiff, against plaintiff in error, hereinafter called defendant, for recovery of damages sustained by the death of his intestate, Samuel C. Delay, caused by the alleged negligence of the defendant's employés. The facts material to the disposal of the assignments of error are simple. The Chesapeake & Ohio Railway bridge at Gauley station is 558 feet long between the abutment and 54 feet above the water of New river. The station on the East side of New river is 400 feet from the abutment. The framework and supports of the bridge are all underneath, and nothing on top except rails and railroad ties. The ties do not extend out a sufficient distance on either side of the rails to afford room for a train to pass a person on the bridge. A high hill or embankment runs up to the abutment of the bridge on the west side of New river for quite a distance, which bank is almost perpendicular. This bank did not extend out more than 12 or 15 inches beyond the ends of the ties, and was filled out to the edge of the bank with loose cinders. On the 22d of April, 1905, Samuel C. Delay, 19 years of age, started to walk over this bridge from the station on the east to the west side of New river. He had reached about the middle of the bridge, when a shifting engine, which was standing by the station and in plain view of Delay, was started across the bridge. There is evidence to the effect, that, when the train started across the bridge, Delay was walking—there was nothing to obstruct the view of the engineer—that Delay started to run when the train started, and as the train increased its speed he increased his. One witness says that, when the engineer was crossing the bridge,' the crew were "ringing the bell, and, if. I ain't mistaken, they were opening the throttle and shutting it off,"and running it up and shutting it off a few times. I do not know how many times they done it." Another witness says that they were "laughing and hollowing, and ringing the bell and blowing the whistle." Delay "was running for his life it looked like." The witnesses differ as to the distance the engine was from Delay as he reached the end of the bridge and jumped off—some say "ten or twelve"—others "six or eight feet from him." Taggart, a witness for the defendant, says he was "about 150 feet" from the engine. Several of plaintiff's witnesses say that the engine was running at a "high rate of speed," whereas the engineer for defendant says that the engine was moving at from "two to three miles an hour"; that Delay was not running at the time he left the track; that when he left the bridge Delay was 200 feet ahead of the engine; that when he saw them he "slowed up." Mrs. Shanlon, a witness for plaintiff, testified that the engineer told her, after the accident, "that he was just running for fun; that he would not have had it happened for anything; that he was sorry for it, for what he did." The uncontradicted evidence is that, as Delay reached the end

of the bridge, he stepped off the track onto some cinders, which gave way, he fell down the embankment, and received injuries which resulted in his death. At the close of the testimony defendant's counsel asked the judge to instruct the jury that they should return a verdict for defendant. This, for manifest reasons, the court could not upon fundamental principles and the uniform decisions of the courts do. Taking plaintiff's and such portion of defendant's testimony as was not contradictory thereof, with all reasonable inferences to be drawn therefrom, to be true, the employés of defendant were not only negligent, but wantonly ran down plaintiff's intestate to his death. This ruling brings us to the question whether the court below was in error in declining to give the following instructions submitted in due time by defendant:

"(2) The court instructs the jury that the railroad company, the defendant in this case, owed no duty to Samuel C. Delay, if they believed from all of the evidence that he was a trespasser on the bridge of the defendant company, except that the law requires that after the peril of the said Samuel C. Delay was actually discovered that those in charge of the train will use reasonable diligence to prevent injuring him, and if they believe from all of the evidence that such reasonable diligence was used and the said Samuel C. Delay had ample time, or although he did not have ample time to save himself, that the action of those in charge of the engine was not wanton, malicious, or intentional that they should find for the defendant.

"(3) The court instructs the jury that the burden of proof in this case is on the plaintiff to show that when Samuel C. Delay was on the trestle that he was discovered by the trainmen in charge of the engine, and that it was known to the men in charge of the engine that he could not get off the bridge in time to avoid injury, and that the said trainmen willfully and recklessly injured him, and unless they believed this from all of the evidence by a preponderance thereof that they shall find for the defendant."

[1] The rule or measure of care required to avoid injuring a trespasser is correctly stated in the prayer for instruction No. 1, but does not sustain the conclusion that the conduct on the part of defendant's employés must be "wanton, malicious, or intentional." No court, so far as we are advised, has held a trespasser to proof of malicious or intentional wrongdoing as the foundation for the recovery of injuries sustained for the conduct of defendant.

[2] The vice in the second prayer consists in imposing upon plaintiff the burden of showing "that it was known to the men in charge of the engine that intestate could not get off the bridge in time to avoid injury and that the trainmen willfully and recklessly injured him." This instruction for manifest reasons could not have been given— hence the assignment of error for that the learned judge declined to do so cannot be sustained. The second assignment of error covers exceptions 1, 2, and 3, included in the request to instruct the jury to answer the issue for defendant.

[3] The third assignment invites an examination of the instruction given by the court in two respects:

"(a) That part of the said general charge that speaks of the duty owed to plaintiff's intestate, after discovery by the servants of the defendant in that it does not say that after such discovery the said servants of said defendant owed him no duty except not to wantonly injure the said plaintiff's intestate."

We do not think that, in the light of the language used by the learned judge, the instruction is open to this criticism. He said to the jury:

"The plaintiff's intestate, it is admitted, was upon the bridge of the defendant company. He was himself negligent in being there. He was a trespasser. Under those circumstances the company, or its employés, who conducted its train, owed him no duty until they discovered him in peril, if he was. When they did discover him in peril, if he was in peril, they owed to him the duty not to wantonly injure him."

This, we think, the correct measure of duty imposed upon defendant's servants.

[4] After discovering a trespasser upon the track, the defendant's employés certainly may not wantonly run him down. There is abundant evidence in this record that defendant's engineer saw intestate when, as he says, the engine was running at only two or three miles an hour, or, as plaintiff's witnesses say, at a much higher rate—that intestate ran and was endeavoring to get off the bridge before being overtaken—that the engineer was in a spirit of levity, running intestate down, evidently expecting him to escape—not anticipating the fatal result of his conduct. This was dangerous, careless, wantonly negligent, and therefore a breach of duty on the part of the engineer. The judge further instructed the jury that, after seeing intestate, they "had a right to act on the assumption that he would exercise ordinary care to get off the track and off the bridge and they were not required to stop the engine or to lessen the speed thereof so long as the said Delay was not seen to be in danger; and, if the jury believe from all of the evidence that after such signals of alarm were given there was abundant time and opportunity for the said Delay to have placed himself in a position of safety and that his failure to do so was his own fault, then they should find for the defendant." Certainly defendant has no ground upon which to base any exception to this instruction. (b) "The defendant also specially objects to so much of the said charge which said that, before a recovery could be had in this case, it was necessary to determine the fact that Delay was in danger of being injured or killed, by reason of the running of the engine, and, second, that the running of the engine was the proximate cause of the injury without at the same time qualifying the said statement by knowledge on the part of defendant's employés and the necessity for a wanton and malicious act on their part after such knowledge." If we correctly interpret the assignment of error—the cause was not argued orally before us—the basis of the criticism of the instruction is that he did not make defendant's liability for intestate's injury to depend upon knowledge on the part of the engineer of the condition of the embankment at the end of the bridge—that immediately by the side of the road were loose cinders calculated to give way if intestate stepped upon them and cause him to fall down the steep embankment, sustaining injury. The judge charged the jury that:

"Before any recovery can be had in this case, you must be satisfied that the engine was at the time Delay was hurt so conducted that it placed Delay in a position of danger and that the accident that subsequently occurred was the result of the danger in which such negligence on the part of defendant placed him."

This language directed the attention of the jury to the fact that defendant's liability depended upon the question whether the act of its employé was the proximate cause of the injury.

[5] If, as the jury evidently found upon sufficient testimony, the conduct of the engineer was a breach of his duty to intestate under existing conditions, defendant cannot escape liability by showing that the engineer did not know that the embankment at the end of the bridge near the track of loose cinders was insufficient to hold intestate's weight when he stepped on them. A party cannot, by his wrongful conduct, place another in a dangerous position and escape liability by showing that in his effort to escape from such position the other party adopted a course of action which he did not anticipate. There is no suggestion that intestate knew that the loose cinders would not hold his weight. Defendant, upon well settled principles, was liable for the injury which naturally and proximately flowed from its wrongful act. [6] It was, under the conditions brought about by defendant's engineer, the duty of intestate to step off the track at the first opportunity which presented itself to a reasonably prudent man. It may be that if he had continued on the track and outrun the engine he would have escaped, but he was under no obligation to take chances. He made an honest effort to escape, in a reasonably prudent way. This is the measure of duty imposed upon him by the law. "Persons in great peril are not expected to exercise the presence of mind and care that should ordinarily be characteristic of a prudent man. The law makes allowance for their excitement, and leaves the circumstances of their conduct to the jury." Administrator v. Wilmington & Weldon R. R., 109 N. C. 430, 14 S. E. 43, 14 L. R. A. 753. The jury evidently believed, and in our opinion, in the light of the weight of the testimony, were justified in finding, that after defendant's engineer saw intestate he, in a spirit of wantonness, not anticipating any injury to him, so operated the engine as to frighten him, so that, when he reached the end of the bridge, he stepped on the side of the track on the loose cinders which gave way, and caused him to fall and strike his head on the stone below. This, we think, makes a clear case of liability. The instructions given by the learned judge were certainly as favorable to defendant as the law permits. There is no error of which it could complain. The judgment must be affirmed.

Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes