## VIGIL v. ATCHISON, T. & S. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1919.)

No. 5293.

1. RAILROADS ⬥320—DUTY OF CARE TO PREVENT INJURY TO PERSON ON CROSSING.

Trainmen who know, or in the exercise of ordinary care ought to know, that a person on a crossing, apparently will not get out of danger, must use all reasonable efforts to slacken speed, or, if possible, to stop, in order to avert an accident.

2. RAILROADS ⬥350(12)—NEGLIGENCE OF OPERATIVES OF TRAIN QUESTION FOR JURY.

In an action by one injured when a train struck his wagon, his team having run away and balked on the track, which was straight, so that one on the crossing could be seen for a half mile, the question whether trainmen were guilty of negligence in failing to slacken speed and stop the train held, under the evidence, for the jury.

3. NEGLIGENCE ⬥72—CARE IN EMERGENCIES.

Persons required to act in sudden emergencies under peculiar circumstances are not charged with that degree of caution required in other cases.

4. RAILROADS ⬥350(31)—NEGLIGENCE OF DRIVER OF TEAM BALKING ON CROSSING QUESTION FOR JURY.

In an action for injuries to one whose team, after running away, balked on the track until a train struck the wagon, the direction of a verdict for defendant on the ground that plaintiff was negligent as a matter of law held improper under the evidence.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by Elias Vigil against the Atchison, Topeka & Santa Fé

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Railway Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded.

J. O. Seth, of Santa Fé, N. M., and H. B. Jamison, of Albuquerque, N. M., for plaintiff in error.

W. C. Reid and G. S. Downer, both of Albuquerque, N. M., for defendant in error.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. The plaintiff in error, hereafter plaintiff, commenced this action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. At the close of plaintiff's evidence the trial court directed a verdict against him. This ruling is assigned as error.

Plaintiff in his complaint in substance charged: That on February 5, 1917, while he was driving a team of horses attached to a wagon in the direction of a public highway crossing over the railroad track of defendant in the county of Sandoval, New Mexico, the horses became uncontrollable through fright and ran to said crossing, stopping upon the railroad track. That plaintiff used his best effort to get said team to move off said track, and was unable so to do before a passenger train of defendant struck the wagon in which plaintiff was seated, thereby throwing him from the wagon and causing his injuries. That while plaintiff was stopped upon the railroad track by reason of the action of his horses, the servants of defendant in control of said passenger train discovered the peril in which the plaintiff was placed, but negligently failed to exercise ordinary care to check and stop said train and thus avoid injuring the plaintiff.

The facts as shown by the record are as follows: On the date mentioned in the complaint the plaintiff, about 6:45 or 6:50 o'clock p. m., started from his house, which was about 1,400 feet in a southeasterly direction from what is known as the Angustura public highway crossing over defendant's track, to drive a team of horses attached to a wagon over said crossing to his father's house, which was located south and west of the crossing. The horses were partly broken, hard on the mouth, and subject to becoming frightened at railroad trains. When plaintiff had proceeded about halfway to the crossing, or 700 feet, the horses became frightened at a passenger train of defendant coming from the north, and started to run along the road toward the crossing. Plaintiff put on the wagon brakes and attempted to hold the team, but was unable to stop them until they reached the crossing, when the team suddenly balked of their own accord; the front wheels of the wagon being in the center of the track. As the plaintiff reached the crossing the passenger train was distant from the crossing about one-half mile. The headlight of the engine was lighted and the whistle was blown from the distance of one-half mile until the train passed the crossing. For this distance of one-half mile the track was perfectly straight, with no obstructions, and a person on the crossing could be plainly seen for the full distance. On the evening in question the weather was clear

and the moon was shining. The passenger train consisted of an engine and four coaches. At the distance of one-half mile from the crossing the speed of the train was 20 miles per hour, but the speed was increased, so that when the crossing was reached it was 40 miles per hour. Between the one-half mile point and the crossing the speed was between 20 and 40 miles per hour. The train, when going 40 miles an hour, could have been stopped within a distance of 600 feet. When it was going 20 miles an hour, it could be stopped within 400 feet. When it was going 30 miles an hour, the train could be stopped within about the same distance as when it was going 40 miles an hour, or 600 feet. After giving this testimony as to the distance in which the train could be stopped, the engineer also said that it would take 800 feet to stop a train going 40 miles an hour with any weight to it. The plaintiff was excited and badly frightened by the runaway and the approaching train. He remained in the wagon, whipping his horses and yelling to them in an effort to get them off the track; but the horses continued to balk, and remained where they had stopped, until the train was almost on them, when they started ahead, the engine hitting the rear of the wagon, causing plaintiff's injuries. At the speed the train was going there was about a minute occupied in going the half mile. These facts do not present the ordinary crossing case.

[1, 2] The plaintiff by his pleading and evidence relied for a recovery upon the rule of law that when an engineer or other railroad employé knows, or in the exercise of ordinary care ought to have known, that a person on the crossing apparently will not get or stay out of danger, it is the duty of such engineer or employé to use all reasonable efforts to slacken the speed of the train and, if possible, stop it in time to avert an accident. 33 Cyc. 977, 979, and cases cited; St. Louis & S. F. Ry. Co. v. Summers, 173 Fed. 358, 97 C. C. A. 328 (C. C. A. Eighth Circuit); Kansas City & S. Ry. Co. v. Shoemaker, 249 Fed. 458, 161 C. C. A. 416 (C. C. A. Eighth Circuit).

We are clearly of the opinion that the case presented is not an impossible or an improbable one, to the extent of permitting the court to direct a verdict on that ground. It has never yet, so far as we have been able to learn, been permitted to man to know just what a frightened horse will do, or to judge its acts by the standard of reason. The facts in evidence, unexplained or uncontradicted, would warrant a jury in finding that the engineer or other employé in charge of the engine of the passenger train knew, or might have known in the exercise of ordinary care, of the peril of the plaintiff within a distance from the crossing which would have allowed the stopping or slackening of the speed of the train before coming into collision with the plaintiff. This being so, we think the court erred in directing a verdict on the ground 'that there was no negligence shown on the part of defendant, in that there was no evidence that the employés in charge of the passenger train knew of the peril of the plaintiff.

[3, 4] It is further contended, however, that if we conceded that the opportunities for knowing the peril of the plaintiff were as stated, then it also must be conceded that the plaintiff knew, or in the ex-

ercise of ordinary care might have known, of the approach of the train, and knowing this, and also that he could not start his horses, it was his duty to jump from the wagon and save himself from injury. A jury might upon the evidence find that the plaintiff was negligent, but the question here is: Was his negligence so plain and beyond question as would authorize the trial court to direct a verdict for the defendant on the ground of contributory negligence? The courts have had to deal with cases where persons in sudden emergencies have been called to act in peculiar circumstances, and they have uniformly held that such persons are not to be charged with the exercise of that degree of caution as is required in other cases. Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 281, 14 Sup. Ct. 619, 38 L. Ed. 434; Davis v. Chicago, R. I. & P. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; National Life Ins. Co. v. McKenna, 226 Fed. 165, 141 C. C. A. 163; Byars v. Wabash R. Co., 161 Mo. App. 692, 141 S. W. 926; Brien v. Detroit United Ry. (D. C.) 247 Fed. 693; Great Northern Ry. Co. v. Harman, 217 Fed. 959, 133 C. C. A. 631, L. R. A. 1915C, 843. No doubt the plaintiff expected to start his horses. He must also have had in mind the fact that his property would be destroyed if he should jump from the wagon. The wagon might derail the engine of the train, and thus cause loss of life, as well as injury to the train. The plaintiff might injure himself in jumping, and those matters, coming upon the plaintiff all at once, must be taken into consideration in determining whether he exercised ordinary care in remaining in the wagon. Certainly the matter is not so clear that the trial court could as a matter of law say that the plaintiff was negligent in not jumping from the wagon. Reasonable men might honestly differ upon that question, and, if that is so, the question of contributory negligence ought to have been left to the jury.

We do not discuss the rule of the last clear chance, as that would involve an assumption that the employés of defendant knew, or in the exercise of ordinary care might have known, of plaintiff's peril, and also an assumption that plaintiff was guilty of contributory negligence, both of which questions we hold ought to have been submitted to the jury.

For error in directing a verdict for defendant, the judgment below is reversed, and a new trial ordered.