(No. 2652.    May 10, 1923.)

VIGIL v. ATCHISON, T. & S. F. RY. CO.

SYLLABUS BY THE COURT.

(1)    Evidence reviewed, and held to sustain a verdict of the jury, which required a finding by it, that the engineer operating the train in question saw the appellee on the railway crossing, which constituted a position of peril, within time to have slackened the speed or to have stopped the train, thereby avoiding the accident and the resulting injury. P. 585.

(2)    A person who is suddenly placed in a position of peril, and thereby becomes so frightened or excited that he is unable to deliberate upon the safety of the comparative courses which are open to him, is not required to act with that degree of care and prudence which would otherwise be obligatory.                                               P. 586.

(3)    Evidence reviewed, and held, that the facts relied upon by the plaintiff are not so manifestly improbable, absurd, or ridiculous that the minds of reasonable men could not differ in reaching the conclusion that they are untrue.
P. 587.

(4)    Where special interrogatories are submitted to the jury, counsel have the right and should be permitted to refer to them, to discuss the evidence and marshal the facts which bear upon the subjects embraced within such special interrogatories, and as a conclusion or deduction from such evidence to suggest what answers should be given.    Counsel may not properly urge that they be answered in a certain manner regardless of the evidence, nor that such special interrogatories constitute a trap within which to catch the jury.                                                  P. 587.

(5)    The jury being constituted of persons who could not read, write, nor speak the English language, requested the court to furnish it the services of an interpreter to assist such jury.    Pursuant to such request, the court administered

an oath to the official court interpreter to merely read or write whatever the jury desired read or written, and to keep the proceedings of the jury secret. After the interpreter had entered the jury room, counsel, who had been present while such interpreter was being sworn and instructed, first objected thereto. Held, any possible error had been waived and that counsel could not thereafter object.    P. 589.

Appeal from District Court, Sandoval County; Hickey, Judge.

Action by Elias Vigil against the Atchison, Topeka & Santa Fe Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

W. C. Reid, Geo. S. Downer, and E. C. Iden, all of Albuquerque, for appellant.

J. O. Seth, of Santa Fe, and H. B. Jamison, of Albuquerque, for appellee.

## Statement of the Case

This action was instituted by the appellee in the district court of Sandoval county for the recovery of damages for personal injuries, which he claims to have sustained as the result of an accident in which one of appellant's passenger trains collided with the wagon drawn by a span of horses then being driven by appellee. This is charged to have occurred on the evening of February 5, 1917, at about 6:45 p. m., at a certain crossing on appellant's line of railway, known and called "Angostura Crossing." Appellant resided at about 1,400 feet southeasterly from this crossing, and his father resided on the opposite side of the railroad, a very short distance southwesterly from said crossing. On the evening in question, appellee started with said wagon and team to go from his home to that of his father, and in so doing it was necessary for him to cross the railroad at the crossing in question. When about halfway from his home to this crossing, the team became frightened and started running away, and in so doing became uncontrollable. He endeavored to stop them, but was unable to do so. That they ran to the crossing and there stopped or balked on the track, the

front wheels of the wagon then being between the rails.
That about this time one of appellant's passenger
trains was approaching said crossing from the north,
being then about one-half mile away, and was there
rounding a curve and starting down the straight line
of track toward the appellee, so that the headlight on
the engine pulling said train began to throw its rays
upon him, his team, and his wagon. That he then be-
gan whipping his team, and using every effort to get
the horses off the track, and as the train approached
he became greatly excited and badly frightened. That
the whistle on said engine at once began blowing, and
continued so to do until the train reached the crossing
and collided with the wagon, throwing the appellee out
and onto the ground, thereby breaking one of his knee-
caps, which caused him great pain, suffering, and an-
guish, required him to remain in bed for about three
months, totally incapacitated him for work for about
one year, and permanently injured his knee, so that he
will never again have its full use. He further showed
that the train in question at the time it rounded the
curve and threw its headlight upon him, being then
about one-half mile away, was traveling at a speed of
from 10 to 20 miles per hour, and that such speed was
increased until at the time it struck him it was travel-
ing at from 35 to 40 miles per hour; that this train
consisted of an engine and four coaches, and when
traveling at 20 miles per hour could be stopped within
a distance of less than 300 feet; when going 30 miles
per hour it could be stopped within a distance of 300
feet, and when traveling 35 to 50 miles per hour, it
could be stopped within a distance of 400 to 500 feet.

Appellant denied appellee's cause of action, and
pleaded as an affirmative defense that he had been
guilty of contributory negligence in that he fell asleep
while sitting in the wagon and approaching the cross-
ing, and that while he was so asleep his team walked
upon said crossing in front of the approaching train,
and further that after discovering his perilous position
he negligently failed to back or drive his team off said

track, or otherwise. By counterclaim, appellant sought to recover damages in the sum of $50 for injuries received by its engine during the collision.

A jury trial was had which resulted in a verdict in appellee's favor in the sum of $3,000, with accrued interest thereon in the sum of $640.

### OPINION OF THE COURT.

BRATTON, J. (after stating the facts as above.) Appellant contends that the court erred in overruling its demurrer to the evidence as well as its motion for a directed verdict. This is predicated upon the contention that there is no evidence of actionable negligence on the part of the agents and servants of appellant in the operation of the train in question. It is asserted in this connection that the doctrine of last clear chance or the discovered peril rule, constituting an exception to the right of a plaintiff, who is guilty of contributory negligence to recover damages, it must be shown that the engineer in charge of the train actually discovered the appellee in his position of peril within time to have slackened the speed or to have stopped the train in time to avoid the accident; that the rule does not extend to and include cases where, by the exercise of ordinary or due care, such peril might have been discovered. The case was tried below upon this theory. The following instruction was given to the jury:

"The jury are instructed that the railway company, defendant in this case, is in no way responsible, either for plaintiff's team running away, if you find from the evidence that it did run away, or for the fact that, after running away the team immediately stopped and balked upon the railway company's track, if you find from the evidence that it did so stop, after running away, and balked upon the railway company's track, and you are further instructed that the only theory upon which you may render a verdict in this case in plaintiff's favor is that the engineer in charge of the locomotive which struck plaintiff's wagon saw plaintiff's peril and knew, from what he saw, that he could not get away from the track in time to prevent being injured; and you must therefore find from the evidence that the engineer in charge of the locomotive did see plaintiff upon the railroal track in time to have stopped the train and have avoided the injury, and that, when he

Vigil v. Atchison, T. & S. F. Ry. Co., 28 N. M., 581.

saw plaintiff at a distance sufficient to have stopped his train and have avoided injury, such engineer knew that plaintiff would not, or could not, get off the track in time to avoid such injury."

[1] We think there is sufficient evidence in the record to warrant the jury in finding that the engineer did see the perilous position of the appellee in time to have stopped the train before reaching the crossing, and to have thereby avoided such accident and the resulting injury. Jose D. Lucero, a witness for the appellee, testified that on September 17, 1917, at the request of the appellee, he went to the point about a half mile from this crossing where the curve ends and the straight track begins and there waited until a passenger train, corresponding in time of day to the train which collided with the wagon, came along, and that by the headlight he could see the appellee as well as his small daughter, who was with him, from the time the engine reached such straight line of track. This test is shown to have been made at about the same time of evening, and under similar circumstances, as those existing on the evening that the accident occurred. It further appears, without dispute, that on the night appellee received his injuries, the whistle began blowing about the time the train reached the end of the curve, being then about one-half mile away, and continued to constantly blow until the collision occurred. No satisfactory explanation of this can be given other than that the engineer did actually see the appellee on the crossing.

We have not overlooked the testimony of witnesses for the appellant which strongly tended to show that an object on said crossing could not be distinguished by a person standing at the point where the curve ends, but this was an issue of fact to be determined by the jury. While we might readily reach a contrary conclusion were the matter submitted to us, we do not feel warranted in disturbing the finding of the jury which is predicated upon substantial evidence. In Corcoran v. Traction Co., 15 N. M. 9, 103 Pac. 645, it is said:

"Another contention is made in support of this proposition which is to the effect that the evidence for the appellee is so overwhelmed by the evidence for the appellant that it is not sufficient to support the verdict. We do not deem it necessary to set out a resume of the proofs in this opinion. We have carefully examined the record, and, while it may be that a conclusion might be reached from the evidence differing from that reached by the jury, if it were within our province to draw such inference, still it cannot be said that there is no substantial evidence to support the verdict, and, therefore, it cannot be disturbed here."

[**2**] It is next argued that the appellee is barred from a recovery herein, on account of his contributory negligence in remaining on the track after seeing the approaching train; that he could have extricated himself from his position of peril by jumping from the wagon or otherwise, and his failure so to do precludes him from recovering. The general rule of law is that a person who is placed in a position of peril is required to use all diligence to extricate himself therefrom, and that his failure so to do precludes a recovery. There is an exception to this general rule which the courts have recognized and declared, and that is that where a person is suddenly placed in a position of peril or serious danger, and he becomes so excited or frightened that he is unable to deliberate upon the safety of the comparative courses which are open to him, he is not required to act with that degree of prudence which would otherwise be obligatory, and, under those facts, a person is not necessarily chargeable with negligence for doing, or failing to do, that which would be required of him under ordinary circumstances. The appellee testified that he was greatly excited and badly frightened, and it was for the jury to determine whether or not he was, under such conditions, negligent. Vigil v. A., T. & S. F. Ry. Co. (C. C. A.) 261 Fed. 313; Union Pac. Ry. Co. v. McDonald, 152 U. S. 281, 14 Sup. Ct. 619, 38 L. Ed. 434; Davis v. C., R. I. & P. Ry. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; National Life Ins. Co. v. McKenna, 226 Fed. 165, 141 C. C. A. 163; Chesapeake & Ry. Co. v. Hawkins, 187 Fed. 568, 109 C. C. A. 258; Byars v. Wabash Ry. Co., 161 Mo. App. 692, 141 S. W. 926;

Brien v. Detroit United Ry. (D. C.) 247 Fed. 693. This rule has been thus announced in Labatt's Master and Servant, § 1274:

> "In other cases the essence of the situation to be considered is that the servant was confronted by a serious danger; that he had not sufficient time to deliberate upon the comparative safety to the alternative courses of action open to him for the purpose of avoiding injury; and that the alarm, or nervous excitement produced by the conjecture impaired his reasoning faculties to such a degree that it was unjust to gauge the quality of his conduct by the ordinary standards. It is well settled that a servant who is suddenly exposed to great and iminent danger is not expected to act with that degree of prudence which would otherwise be obligatory; or, as the doctrine is also expressed, a servant is not necessarily chargeable with negligence because he failed to select the best means of escape in an emergency."

which text has been approved by this court in Melkusch v. Victor, American Fuel Co., 21 N. M. 396, 155 Pac. 727, wherein it is said:

> "The text is abundantly supported by the authorities, and, indeed, the rule is so clearly fair and just and so fully in accordance with the known instincts of mankind that no argument is required to support it."

[3] The next contention urged for a reversal is that the entire facts relied upon by the appellee are so manifestly improbable, absurd, and ridiculous that the minds of reasonable men could not differ in reaching the conclusion that they are unture. After a careful reading of the record, we are unable to concur in this contention. This case was originally instituted in the federal court and there resulted in a directed verdict in favor of the railway company. From that action, an appeal was taken to the Circuit Court of Appeals, which reversed the case and held that there were sufficient facts to require a submission of the case to a jury. Vigil v. A., T. & S. F. Ry. Co. (C. C. A.) 261 Fed. 313. We are content to follow that court upon this question.

[4] Three special interrogatories were propounded to and answered by the jury; such interrogatories, and the respective answers thereto, being as follows:

(1) "Could plaintiff, Elias Vigil, by the exercise of ordinary care, after he saw the approaching train as he sat in

the wagon at the crossing, have gotten out of the wagon and avoided being struck by the train?    Answer: No."

(2) "What do you find, from the evidence in this case, to be the distance from the crossing at which the engineer could clearly distinguish plaintiff whipping his horses?    Answer: Seven hundred feet."

(3) "What do you find, from the evidence in this case, to be the distance from the crossing at which the engineer first clearly saw the plaintiff and his team on the track? Answer: Seven hundred feet."

Before the argument began, counsel for the appellant objected to counsel for the appellee making any argument whereby the jury would be directed what answer should be made to any of such special interrogatories in order to conform to the general verdict in favor of either party.   No ruling by the court was made upon this general and preliminary objection. During the argument, counsel for the appellee discussed each of the special interrogatories, and, in effect, stated to the jury that if they concluded upon the whole case appellee was entitled to recover it was extremely important that their answers to the special interrogatories should harmonize and agree with such a general verdict.   In that connection, the evidence was reviewed; the testimony of certain witnesses specifically discussed, and as a conclusion or deduction, counsel suggested to the jury the respective answers which they believed should be given.   The argument did not go to the extreme of advising the jury that in case of a conflict between the general verdict and the answers to the special interrogatories the latter would control the former; the legal effect of such answers was not discussed, and in the argument it was not suggested that these interrogatories should be answered in a certain manner regardless of the evidence.   Counsel did express their opinion as to what the answers should be, but such answers were merely the opinion of counsel predicated upon the evidence.   This argument, we think, was legitimate.   When special interrogatories are submitted, counsel should not be restricted to an argument dealing exclusively in generalities; but they should, under such circumstances, be permitted to refer to the

special interrogatories, discuss the evidence, and marshal the facts which bear upon each of them, and as a conclusion, predicated upon and arising from such evidence, express an opinion as to what the answers to such interrogatories should be. This character of argument might materially assist the jurors in understanding the scope of such interrogatories, and the salient points in the evidence which bear upon them, and which should guide them in making up their answers thereto. Indeed, counsel may not properly urge that jurors answer special interrogatories in a certain fashion regardless of the evidence. This, for reasons which are manifest, and neither could they properly characterize special interrogatories as a trap within which to catch the jury; but the argument we now have under consideration does not partake of that character. That argument of this character is proper, see Stacy v. Cook, 62 Kan. 50, 61 Pac. 399; Laffery v. United States Gypsum Co. et al., 92 Kan. 475, 141 Pac. 241; Pullman Co. v. Finley, 20 Wyo. 456, 125 Pac. 380; Timins v. C., R. I. & P. Ry. Co., 72 Iowa, 94, 33 N. W. 379; Powell v. Chittick, 89 Iowa, 513, 56 N. W. 652; Zucker et al. v. Karpeles et al., 88 Mich. 413, 50 N. W. 373; Guse v. Power & Mining Machinery Co., 151 Wis. 400, 139 N. W. 195; Gresley v. State ex rel. Neireiter, 123 Ind. 72, 24 N. E. 332; Clear Creek Stone Co. v. Carmichael, 37 Ind. App. 413, 73 N. E. 935, 76 N. E. 320; Pape et al v. Hartwig, 23 Ind. App. 333, 55 N. E. 271; C. & A. Ry. Co. v. Gore, 202 Ill. 188, 66 N. E. 1063, 95 Am. St. Rep. 224.

[5] Practically all of the jurors in this case were of Spanish descent, and were unable to speak, read, or write the English language. After they retired to deliberate upon a verdict, the jurors requested the court to furnish them an interpreter to assist them in the jury room. Pursuant to this request, and while counsel for both parties were present, the official court interpreter was sworn to keep secret the proceedings of the jury, and then instructed to merely read or write anything which the jurors might desire him to read or write, and was then directed to enter the jury room to

so assist the jurors. Although counsel for the appellant was present while all this was being done, no objection whatever was made until after the interpreter had entered the jury room. Then an objection was made and a request that he be withdrawn. Having stood by, without objection, until the interpreter had entered the room, counsel will not be heard to thereafter object. If any error was committed, it had been done at the time the objection was first made, in this, the interpreter had already entered the room and was then with the jurors. If reversbile error was committed, its commission had already occurred when the objection was first made. Counsel being present and knowing what was being done, was required to timely and seasonably object and call attention of the court to any claimed error. Having failed so to do, the appellant waived any possible error which may have existed.

Other errors are assigned, but we find none of them to be meritorious.

The judgment should be affirmed, and it is so ordered.

PARKER, C. J., and RYAN, District Judge, concur.