**333 P.2d 879**

**Violet MITCHELL, Plaintiff-Appellee,**

**v.**

**Edd PETTIGREW, d/b/a Glenrio Bar, Defendant-Appellant.**

**No. 6470.**

Supreme Court of New Mexico.

Dec. 30, 1958.

138

Emmett C. Hart, Tucumcari, for appellant.

Rowley, Breen & Bowen, Tucumcari, for appellee.

SHILLINGLAW, Justice.

■ Plaintiff (appellee) Violet Mitchell filed a complaint in the District Court of Quay County against the defendant (appellant) Edd Pettigrew alleging damages in the amount of $12,000 by reason of the defendant's negligence as a result of which she fell into a hole and broke her ankle. We must rely upon the facts submitted by the appellant inasmuch as the appellee's independent statement of facts cannot be entertained under Supreme Court Rule 15, subd. 15(3).

The accident climaxed an evening of gaiety enjoyed by the plaintiff Violet, her girlfriend Frieda, and four gentlemen friends. The festivities commenced at a bar in San Jon, New Mexico, about 5 p. m. on the 24th of May 1957. The party remained at the San Jon bar for several hours, enjoying each other's companionship as well as several bottles of beer, Violet having five, six, or possibly seven. A good time was being had except that Violet and Frieda for some unknown reason had developed an antagonistic attitude toward each other and at times they became quite combative.

Around 10 p. m. all seem to have developed an appetite for solid food and they departed in two cars for Glenrio, New Mexico, where they ate at a cafe on the Texas side of this hamlet located on U. S. Highway 66 at the Texas-New Mexico line. While the party dined one energetic member of the group prevailed on the defendant's bartender to open up the Glenrio Bar, it having already closed at about 10 p. m. that evening. Violet's party of six, and another party which was dining at the cafe recrossed the state line to the New Mexico side, Violet's party of six all going in one car. At the Glenrio Bar most of the party enjoyed another drink or two, Violet herself having one creme de menthe with soda. The girls renewed their feuding and Violet went outside to sit in the car. Shortly thereafter the bartender advised the group he was closing and the rest of the party went outside, Frieda inadvertently poking her hand through a glass door on the way out. Two of the men preceded the general exodus and they got in the car with Violet and drove back to the cafe to pick up the other car. In the meantime, the bartender

meant what he said. He checked his cash, turned out the lights, locked the door and left the premises. All of the patrons, including the balance of Violet's party and the other group which had come from the cafe, lingered on the porch and driveway exchanging pleasantries and casually preparing for their departure.

Across the front edge of the porch were eight pillars made of three-inch pipe, supporting the roof of the porch. Remember that Frieda and one or two of her gentlemen friends were awaiting the return of the two cars. "The devil," they say, "finds work for idle hands to do," and this was especially true for Frieda who, incidentally, seems to have been most exhilarated of the party. She proceeded to swing from one pole to the next, going from east to west. It was apparent to at least one of her gentlemen friends that she would soon run out of poles and that the result would be very funny indeed. True enough—as she left the last pole she swung through the air and landed on a mound of freshly dug earth off the west end of the porch.

We now pause to describe the layout of the Glenrio Bar and the parking area in front of it. The bar fronts on U. S. Highway 66 and the building measures about 66-feet from east to west with a long porch, about 6 to 8 feet in width, extending across the entire front. The building sits back from the highway and a parking area is in front. The porch is practically level with the parking area except on the west where there is a dropoff, now supported by a retaining wall which was under construction at the time of the accident and was then only level with the parking area. The dropoff at the street end of the wall was negligible but it gradually increased until there was a three or four foot drop at the west end of the porch. There was a large hole at the southwest corner of the porch which had been dug for the base of a huge sign to be erected. The mound of earth was from the freshly dug hole and was of sufficient height to be level with the parking area. The whole area is perfectly level except for the dropoff to the west of the retaining wall then under construction. There was no barricade of any kind on the west end of the porch or on the driveway. With this description of the area, we return to the girls.

Frieda is sprawled atop the mound of dirt as Violet and her friend return to the bar. We cannot fathom the thoughts racing through Violet's mind as she viewed the desperate plight of Frieda lying prostrate on the ground pinpointed in the car headlights. Her counsel suggests she may have been shaken up with remorse, remembering the harsh words so recently passing between them. Violet herself testified she was plum "scared." Her first impulse, naturally, was to rescue Frieda from the cruel fate that confronted her. She leaped from the car,

running to the aid of fallen Frieda. The thoughtless gentlemen who observed the episode were roaring with laughter, one of them rolling on the ground in mirthful glee. But Violet, fired with the sudden peril, failed to observe the sudden dropoff at the edge of the driveway or the deep hole at the base of it. Her rescue mission failed as she dropped from sight into the deep dark hole in the ground and she herself then became the object of a fishing expedition.

How was she to know that Frieda was unharmed? How was she to know that her mission of mercy was to end up with herself in a hole in the ground, suffering from a broken ankle from which a Quay County jury was to award her $2311 damages against Edd Pettigrew, owner of the Gleniro Bar?

Such are the grave questions confronting us on this appeal and to which we now direct our attention. Appellant contends in his three points relied upon for reversal that (1) appellee was a trespasser on the defendant's premises at the time of the accident, which precluded recovery, (2) appellee, even if an invitee on the premises, was guilty of contributory negligence as a matter of law by going upon unfamiliar premises in the dark, and (3) she was guilty of contributory negligence as a matter of law in that she would not have fallen if she had observed where she was running.

First we must bear in mind that the jury was properly instructed by the learned trial judge who skilfully presided at the trial of this case; the appellant made no objections to the instructions and the jury found the issues presented in favor of the appellee. Therefore, before we can find for the appellant on his first point, we must say as a matter of law that, while the appellee drove down the street three or four blocks to the state of Texas and returned approximately ten minutes later to join her companions for the purpose of transporting them to their respective homes, she lost her favored position as a business invitee and became a trespasser. This we cannot do. Admittedly the problem has caused us considerable concern but we conclude that it was a proper question for the jury to decide in this particular instance. Young Men's Shop v. Odend'Hal, 73 App.D.C. 354, 121 F.2d 857.

Appellant further contends that as a matter of law the appellee was off the part of the premises to which her original invitation applied. In view of the appellant's failure to properly protect and barricade the business invitee from the sudden drop off the porch we think appellant cannot avail himself of that defense, his failure to barricade and protect being the very act by which he was negligent.

We will decide appellant's second and third points together. In support of his po-

sition that appellee was guilty of contributory negligence as a matter of law, appellant cites our own case of Boyce v. Brewington, 49 N.M. 107, 158 P.2d 124, 163 A.L.R. 583, as well as the cases of Dominguez v. Southwestern Greyhound Lines, 49 N.M. 13, 155 P.2d 138, and Seal v. Safeway Stores, Inc., 48 N.M. 200, 147 P.2d 359. The cited cases might compel us to hold for the appellant were it not for the factor of sudden peril as it developed in this case.

As stated by the annotator at 19 A.L.R. 4, 5:

"The rule is well settled that one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life, or serious injury, in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. * * * [T]he fact that the injury is sustained in attempting to save human life is a proper element for consideration upon the question of contributory negligence, and * * * the latter question ordinarily is one for the jury, and not for the court."

See, also, annotation at 158 A.L.R. 208; Vigil v. Atchison, T. & S. F. Ry. Co., 28 N.M. 581, 215 P. 971; Vigil v. Atchison, T. & S. F. Ry. Co., 8 Cir., 261 F. 313.

From the foregoing it is apparent that the appellant's points are without merit. Thus falls the curtain on this evening's exciting and manyfold activities. The judgment of the court below is affirmed and

It is so ordered.

LUJAN, C. J., McGHEE and COMPTON, JJ., and DAVID W. CARMODY, D. J., concur.

SADLER, J., not participating.