529 P.2d 294

**Margaret E. NEFF, as Personal Representative of Floyd M. Neff, Deceased, and as Administratrix of the Estate of Floyd M. Neff, Deceased, Plaintiff-Appellant,**

v.

**WOODMEN OF the WORLD LIFE INSURANCE SOCIETY, Woodmen of the World Youth Camp, Inc., of New Mexico, and Bobby L. Vandelinde, Defendants-Appellees.**

No. 1300.

Court of Appeals of New Mexico.

Oct. 16, 1974.

Rehearing Denied Oct. 30, 1974.

Certiorari Denied Nov. 27, 1974.

Joseph Warner, III, Julius M. Wollen, Wollen & Segal, Albuquerque, for plaintiff-appellant.

Michael P. Watkins, William J. Lock, Oldaker & Oldaker, Albuquerque, for defendant-appellee Woodmen of the World Life Ins. Soc.

Jonathan B. Sutin, Sutin, Thayer & Browne, Albuquerque, for defendant-appellee Woodmen of the World Youth Camp, Inc.

K. Gill Shaffer, Donald L. Jones, Shaffer, Butt & Jones, Albuquerque, for defendant-appellee Bobby L. Vandelinde.

OPINION

HERNANDEZ, Judge.

Plaintiff filed this action as personal representative and administratrix of the estate of her husband, Floyd M. Neff, deceased, for personal injuries and wrongful

death. Summary judgment in favor of all defendants was granted by the trial court; and plaintiff appeals. We affirm.

The pertinent facts are these: Plaintiff and her deceased husband owned a home near the town of Manzano, New Mexico, in Torrance County. During the latter part of 1967 or the early part of 1968, defendant Woodmen of the World Youth Camp, Inc. (Youth Camp), a non-profit corporation, bought a 40 acre parcel adjoining the Neff's parcel on the east. It was purchased for the purpose of establishing a summer youth camp. In 1968, and early 1969, three cabins and a dining hall were constructed, and a house trailer was moved onto the property. The nearest building was about 60 to 75 feet from the common property line. The camp was used only during the summer months and was not guarded during the other months of the year. Precautions taken by defendant Youth Camp against theft or vandalism when the camp was not in use included locking the doors and wooden shutters on the buildings and constructing an improved main gate. When originally purchased by the Youth Camp there was a barbed wire fence around the property. The improved gate and another unimproved gate were also kept locked. Equipment kept in the buildings during the off-season included some wooden tables, benches, bunks, a stove, a refrigerator, a freezer, and food, and some athletic equipment and .22 caliber ammunition used for target practice.

Defendant Vandelinde was an employee of the defendant Woodmen of the World Life Insurance Society and a non-paid officer of the Youth Camp.

On May 3, 1969, before the camp had opened for the summer, the deceased went over to the Youth Camp to investigate possible criminal activity. Shortly after the deceased had left home, Mrs. Neff followed. Before she reached the Youth Camp, she heard shots being fired. As she approached the main dining hall, she saw four men fleeing from the scene. Inside that building she found her husband lying

on the floor suffering from multiple gunshot wounds. The deceased expired on May 21, 1969 of these wounds.

In the five months or so preceding this shooting, the Youth Camp had been broken into several times, and some food and a quantity of the .22 caliber ammunition were stolen. Windows had been broken in the house trailer, and other acts of vandalism had been committed. Each of these incidents was reported to the Torrance County Sheriff by the Youth Camp.

Predating these events at the Youth Camp, the Neff property had been vandalized on two occasions during 1968. The deceased sought and obtained appointment as deputy sheriff and had gone over to the Youth Camp to investigate the presence of people there on several occasions while armed. Although the deceased had never been requested by defendant Vandelinde or anyone else connected with the Youth Camp to look after that property, defendant Vandelinde always thanked the deceased for his vigilance in checking on the Youth Camp; but he told the deceased that it was not necessary for him to look in on the property. Of appellant's two points on appeal we need discuss only the first because it is dispositive. The point is that the trial court erred in granting summary judgment because there were genuine issues as to material facts with regard to the issues of negligence, proximate cause and duty, among others.

Appellant argues that the defendants were negligent in that during the construction of the Youth Camp "valuable building materials and equipment were driven through the town of Manzano and other nearby towns." The complaint also alleges that during the construction phase, valuable building materials, equipment and tools were left unguarded over weekends and at night and that ". . . the dining hall was constructed in such a manner as to be very easily entered by persons without authority to do so." The complaint further alleges that ". . . no steps were taken to guard the property and persons on or

near the Youth Camp property, including neighbors and other persons and including the Neffs, from the risk of serious harm from the criminal and/or negligent acts or omissions of base persons in the area. . . .," and that " . . . this was an economically poor area where it should be expected that valuable property left unguarded and unprotected would invite criminal or negligent conduct." The legal theory of plaintiff's complaint is based upon the doctrine of rescue. One of the most eloquent formulations of this doctrine was made by Justice Cordozo when he was serving on the Court of Appeals in New York:

> "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. . . ." Wagner v. Int'l. Ry., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921).

Some courts have limited the doctrine exclusively to situations where human life is imperiled. The majority of courts, however, have extended it to include situations where property is in danger of being severely damaged or destroyed. Some examples of the majority view are Schmartz v. Harger, 22 Conn.Supp. 308, 171 A.2d 89 (1961); Rushton v. Howle, 79 Ga.App. 360, 53 S.E.2d 768 (1949).

One of the most complete statements of the doctrine as applied in the majority of jurisdictions follows:

> " . . . Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, short of rashness and recklessness, may attempt, successfully or otherwise to rescue such endangered life or property, by any means reasonably appropriate to the purpose; and insofar as the approximate cause of any injuries that a rescuer sustains as a result of his efforts is concerned, the chain of causation remains intact, since it is reasonably to be anticipated that, once such peril to life or property is initiated and brought into being by the negligence of a defendant, reasonable attempts will be undertaken to alleviate and nullify the consequences of such peril." Walker Hauling Co. v. Johnson, 110 Ga.App. 620, 139 S.E.2d 496 (1964).

■ As can be seen the doctrine should only be applied in those situations that invite rescue which were created by some negligent act of the defendant. When the foundation of negligence is lacking, the doctrine is inoperative. Rose v. Peters, 82 So.2d 585 (S.Ct.Fla.1955); Brady v. Chicago & N. W. R. Co., 265 Wis. 618, 62 N. W.2d 415 (1954); Montega Corporation v. Grooms, 128 Ga.App. 333, 196 S.E.2d 459 (1973). The principles which underlie the rescue doctrine are in harmony with the spirit of Tort Law in New Mexico. However, since the doctrine is not operative under the facts of this case we need not formulate a statement of the doctrine at this time.

■ Our examination of the record reveals no negligence on the part of any of the defendants. Negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person. Bogart v. Hester, 66 N.M. 311, 347 P.2d 327 (1959); Latimer v. City of Clovis, 83 N.M. 610, 495 P.2d 788 (Ct.App.1972); Kelly v. Montoya, 81 N.M. 591, 470 P.2d 563 (Ct.App.1970).

Defendant's showing was that there was no foreseeability of harm to Mr. Neff and no duty on defendant's part, as reasonable men, to take additional precautions in connection with their property for the protection of Mr. Neff. Restatement of Torts

2d, § 302 B, comment (d). Plaintiffs did not meet their burden of showing a factual issue existed, either as to foreseeable harm or as to a duty to Mr. Neff. Summary judgment was proper. Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972).

It is so ordered.

WOOD, C. J., and LOPEZ, J., concur.