654 P.2d 574

**Liberto PADILLA, Plaintiff-Appellee,**

**v.**

**HOOKS INTERNATIONAL, INC. and Thomas T. Manes, Defendants-Appellants.**

**No. 5493.**

Court of Appeals of New Mexico.

Oct. 19, 1982.

Certiorari Denied Dec. 1, 1982.

James C. Ritchie, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellants.

Lowel Stout, Stout & Stout, Hobbs, Sarah M. Singleton, Singleton & Roberts-Hohl, Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendants appeal a judgment in favor of the plaintiff for personal injuries following a directed verdict on the issue of liability and jury verdict on damages. We affirm.

The issues for our decision are: 1. propriety of the directed verdict on the issue of liability; 2. abuse of the trial court's discretion for excluding certain deposition testimony.

## FACTS

Randall Corporation had leased a backhoe from Hooks International, Inc. Liberto Padilla, an employee of Randall, operated the backhoe for Randall. On August 25, 1978, Randall requested Hooks to send out a mechanic to repair a hydraulic leak in the piece of equipment. Hooks sent out Thomas Manes and another employee that day to fix the backhoe. On August 28, 1978, Padilla again requested his employer to call Hooks for a repairman, because the backhoe was still leaking. Manes came out to the jobsite on that day to repair the backhoe.

Padilla parked the backhoe in a clear area in front of the office; he lowered the bucket on the piece of equipment to the ground, turned off the machine, and got out. He spoke with Manes about the leak. Then Padilla turned the machine over to Manes, who stepped into the equipment, turned on the backhoe and raised the bucket as high as it would go.

Manes, with the help of Padilla, removed the hood of the backhoe. Manes stood on a tire and leaned over to work on the engine. Padilla and Dahlke, a general foreman at Randall, were standing near the backhoe; both men warned Manes that it was dangerous to work on the machine with the bucket up and no blocking. Manes ignored the warnings and continued to work inside the engine. The bucket slipped down a little, and Padilla again told him to lower the bucket. Manes again ignored the warning and kept on working around in the engine. Suddenly, hydraulic fluid spewed out of the engine onto Manes and Padilla and the bucket fell. One of the arms to the bucket came down on Manes, crushing him.

Padilla ran over and blocked the bucket with his hands and his body to keep it from falling all the way down. He also started screaming for help. Several men in the vicinity ran to the scene and helped hold the bucket. Manes was removed and taken to

the hospital. He suffered some broken bones, but he lived.

Padilla suffered injuries to his back as a result of his rescue efforts. He sued Hooks and Manes for damages. After all the evidence was heard at the trial, the judge directed a verdict in favor of Padilla on the issue of liability. The jury then determined the amount of damages.

## DIRECTED VERDICT ON ISSUE OF LIABILITY

Defendants contend that the directed verdict on liability was improperly granted because reasonable minds could differ on whether Padilla negligently helped create the dangerous condition which ultimately led to his injuries, and whether Padilla was negligent in his rescue efforts.

To decide these issues we must review rules governing the trial court and appellate duties in a directed verdict appeal.

In *American Employers' Insurance Co. v. Crawford,* 87 N.M. 375, 533 P.2d 1203 (1975), the Supreme Court addressed the trial judge's duties upon being presented with a motion for a directed verdict. The Court stated as follows:

> It is the province of the trial court to determine all questions of law, including the legal sufficiency of any asserted claim or defense. If the evidence fails to present or support an issue essential to the legal sufficiency of an asserted claim, the right to jury trial disappears. (Citations omitted). It is fundamental that the evidence adduced must support all issues of fact essential to the maintenance of a legally recognized and enforceable claim. Otherwise, there can be no basis in fact for the claim, and it must be dismissed as a matter of law.

87 N.M. at 376, 533 P.2d 1203.

Moreover, the Court has stated that when reasonable minds cannot differ, a directed verdict is not only proper, but the court has a duty to direct a verdict. *See Owen v. Burn Const. Co.,* 90 N.M. 297, 302, 563 P.2d 91, 96 (1977); *Gildersleeve v. Atkinson,* 6 N.M. 250, 265, 27 P. 477, 481 (1891).

The standard to be used when examining the propriety of a directed verdict is as follows:

> "In ruling on a motion for a directed verdict, the trial court must view the evidence, together with all reasonable inferences deducible therefrom, in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.)
> " * * *
> "The appellate court, upon reviewing a judgment entered pursuant to a directed verdict, must also view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.)"

*Skyhook Corp. v. Jasper,* 90 N.M. 143, 146, 560 P.2d 934, 937 (1977) (quoting *Archuleta v. Pina,* 86 N.M. 94, 95, 519 P.2d 1175, 1176 (1974)).

Accordingly, the next step is to examine the evidence adduced at trial viewing it in the light most favorable to the defendants. When examining the evidence we must also apply the rules applicable to the creation of a dangerous situation and the rescue doctrine.

## CREATION OF A DANGEROUS SITUATION

There are two ways in which a plaintiff's own negligence can become a fact question in rescue doctrine cases. First, the plaintiff may have been negligent by helping to create the very situation which later "invited" his rescue.

> The rule which relieves from contributory negligence one who voluntarily exposes himself to danger in order to rescue another person from peril does not apply where the rescuer is himself solely or in part responsible for the peril which confronts the one whom he attempts to save. If the third person's peril is due in part to the plaintiff's own negligence, such negligence is a contributing factor in producing any harm which he sustains in his rescue attempt. * * *

57 Am.Jur.2d *Negligence* § 423 (1971). *See also Cords v. Anderson,* 80 Wis.2d 525, 259 N.W.2d 672 (1977).

The defendants argue that Padilla, as agent for Randall, had a duty to exercise reasonable care to provide a safe place to work for Manes, a business invitee. They further argue that a jury question exists whether Padilla fulfilled that duty by the actions he took before the accident. The defendants based this argument on the idea that Padilla was in possession and control of the premises on which the backhoe was parked.

The question whether Padilla had a duty to provide safe premises is a matter of law. *Sanchez v. United States,* 506 F.2d 702, 704 (10th Cir.1974). If Padilla owed no duty to Manes, then limiting his actions to warning Manes could not be considered negligent.

*Fresquez v. Southwestern Ind. Con. & Riggers, Inc.,* 89 N.M. 525, 554 P.2d 986 (Ct.App.) *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976), provides some enlightenment on the question of Padilla's duty to Manes. In that case, a subcontractor rented a crane and crane operator for a job. A piece of stabilizing equipment fell off the crane and killed Fresquez, an employee of the subcontractor. The court discussed the duty of a general contractor to provide a safe jobsite for his own employees and employees of an independent contractor. The court stated that "[t]he 'place' the general contractor must keep safe does not include the equipment of the independent contractor." 89 N.M. at 531, 554 P.2d 986 (citations omitted). It held that the general contractor was not liable for Fresquez' death on the theory that the general contractor controlled the premises. *Id.* at 532, 554 P.2d 986.

█ A similar situation presents itself in this case. The backhoe was owned by Hooks. Manes was Hooks' employee, sent out to repair the backhoe. Once Padilla turned the piece of equipment over to Manes, Padilla was no longer exercising any control over it. The fact that the backhoe was standing on ground that was under under Randall's control does not automati-

cally bring the piece of equipment under Randall's control. The total facts are very important, and are as follows: 1) Hooks owned the backhoe and controlled repairs to the backhoe, 2) Manes was Hooks' employee, sent by Hooks to repair the backhoe, 3) Manes had taken control of the machine to effect repairs, and 4) Manes created the dangerous situation after he took physical control of the backhoe. There is not sufficient reason to conclude that Padilla, as agent for Randall, had a duty to ensure that Manes, or others repairing the backhoe, would do so with reasonable care.

We conclude that there is no evidence, or reasonable inferences deducible therefrom, upon which reasonable minds could base a finding of negligence on the part of the plaintiff. Therefore, the question of Padilla's negligence became a matter of law for the court. The court properly directed a verdict on this matter.

## RESCUE DOCTRINE

The defendants contend that the issue of contributory negligence under the rescue doctrine should have gone to the jury instead of the court granting a directed verdict. We shall review the doctrine from the standpoint of our appellate court and other jurisdictions.

In 1921 Justice Cardozo in *Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1921), set forth the principles underlying the doctrine that absolved the rescuer from the finding of contributory negligence:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. (Citations omitted). The railroad company whose

train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had. (Citation omitted.)

133 N.E. at 437–38.

In 65A C.J.S. *Negligence* § 124 (1966) the rule of the Rescue Doctrine is stated as follows:

Under what is commonly referred to as the rescue doctrine, conduct which might otherwise be considered contributory negligence may not be so considered where a person is injured in attempting to save others from imminent danger of personal injury or death. Persons are held justified in assuming greater risks in the protection of human life where they would not be under other circumstances.

One is not guilty of contributory negligence in exposing himself to danger of injury in order to rescue another from imminent danger of personal injury or death if, under the same or similar circumstances, an ordinarily prudent person might so expose himself, or, as often expressed, if the act of intervention is not performed under such circumstances as would make it rash or reckless in the judgment of ordinarily prudent persons. This is true even though the person attempting the rescue knows that it involves great hazard to himself without certainty of accomplishing the attempted rescue and even though in attempting such rescue he thereby imperils his own life.

In *Calvert v. Ourum,* 40 Ore.App. 511, 595 P.2d 1264 (1979), the court stated that "[t]he rescue doctrine does not alter the standard of care. It remains the same. The rescue doctrine operates like the emergency doctrine in that it simply applies the reasonable and prudent person standard to a particular set of circumstances. (Citation omitted). The question is whether a rea-sonably prudent person would have acted similarly as the plaintiff did *under the same or similar circumstances."* 595 P.2d at 1267 (emphasis original).

In *Lave v. Neumann,* 211 Neb. 97, 317 N.W.2d 779 (1982), the court addressed the scope of the rescue doctrine, and stated that "[t]he extent of the risk which the volunteer is justified in assuming under the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove or eliminate the hazard; that is, the less the danger to the third party, the less the risk the volunteer is justified in taking." 317 N.W.2d at 782 (citation omitted).

In *Solgaard v. Guy F. Atkinson Company,* 6 Cal.3d 361, 491 P.2d 821, 99 Cal.Rptr. 29 (1971), the California Supreme Court stated that the rescue doctrine "substantially restricts the availability of the defense of contributory negligence by requiring the defendant to prove that the rescuer acted rashly or recklessly under the circumstances." 491 P.2d at 825, 99 Cal.Rptr. at 33 (footnote omitted).

This Court in *Neff v. Woodmen of World Life Insurance Society,* 87 N.M. 68, 529 P.2d 294 (Ct.App.) *cert. denied,* 87 N.M. 48, 529 P.2d 274 (1974), discussed the rescue doctrine. Our court stated as follows:

One of the most complete statements of the doctrine as applied in the majority of jurisdictions follows:

" * * * Where a defendant's negligent act, of commission or omission, has created a condition or situation which involves urgent and imminent peril and danger, to life or property, of himself or of others, those acts of negligence are also negligence in relationship to all others who, in the exercise of ordinary care for their own safety under the circumstances, short of rashness and recklessness, may attempt, successfully or otherwise to rescue such endangered life or property, by any means reasonably appropriate to the purpose; and insofar as the approximate cause of any injuries that a rescuer sustains as a result of his efforts is con-

cerned, the chain of causation remains intact, since it is reasonably to be anticipated that, once such peril to life or property is initiated and brought into being by the negligence of a defendant, reasonable attempts will be undertaken to alleviate and nullify the consequences of such peril." *Walker Hauling Co. v. Johnson,* 110 Ga.App. 620, 139 S.E.2d 496 (1964) 87 N.M. at 70, 529 P.2d 294.

With the above principles of law laid down by this Court in *Neff* and the other courts, we have viewed the evidence in the record in the light most favorable to the defendants. We summarize the evidence to support our conclusion that the rescue doctrine should be applicable to the facts at bar.

■ Padilla's actions were effective and they saved Manes' life. There was no evidence of alternative actions that Padilla could or should have taken under the circumstances, short of refraining from his rescue efforts. The trial court concluded that Padilla's efforts were reasonable under the circumstances and we agree. There was no evidence that Padilla acted rashly or recklessly. There was no evidence of a reasonable alternative means of rescue.

We conclude that there is no evidence, or reasonable inferences deducible therefrom, upon which reasonable minds could differ in finding that Padilla was not unreasonable in his actions, and that his efforts of the rescue were not unreasonably carried out. The issue therefore became a matter of law to act upon. We hold that the trial court properly ruled there was no factual issues as to negligence on the part of the plaintiff, and properly directed a verdict against defendants on the issue of liability inasmuch as no issue is raised as to defendants' negligence.

DEPOSITION TESTIMONY

At trial Mr. Padilla testified that he stayed around the backhoe waiting for the machine to be fixed so he could go back to work. In his deposition, he testified that he stayed around, after Manes started working, to help Manes. The plaintiff objected to the use of the deposition because the defendants had not pleaded the special servant doctrine. The plaintiff successfully argued to the trial court that, having failed to plead the special servant doctrine, the defendants should not be allowed to get in evidence that which would have tended to prove the special servant doctrine to be applicable. On appeal the defendants argue that the failure to permit cross-examination on Padilla's deposition testimony was reversible error.

■ It is well recognized that under Rule 611 of the New Mexico Rules of Evidence the trial court has the power to control the mode and order of interrogating witnesses and presenting evidence. This includes the right to control and limit cross-examination of a witness. The exercise of discretion in controlling the mode of interrogation will not be disturbed except upon a showing of abuse. *State v. Smith,* 92 N.M. 533, 539, 591 P.2d 664, 670 (1979); *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (Ct.App.1972).

The defendants argue that they sought to use the deposition testimony to impeach Padilla, and that the opportunity for such impeachment was crucial to the issue of Padilla's negligence in creating the dangerous situation.

■ We determined above that Padilla had no duty to prevent Manes' negligent behavior. Therefore, because the testimony was not necessary for determination of Padilla's duty to Manes, and because it could not be used to advance the special servant doctrine, the trial court did not abuse its discretion in excluding the testimony in question.

The judgment is affirmed. Appellate costs should be paid by the defendants.

WOOD, J., concurs.

SUTIN, J., concurs in result.

SUTIN, Judge (concurring in result).

I concur in the result.

My disagreement with Judge Lopez rests in the law—the meaning of the "Rescue Doctrine," not with the facts.

*Neff v. Woodmen of World Life Insurance Society,* 87 N.M. 68, 529 P.2d 294 (Ct. App.1974) did not formulate a statement of the "Rescue Doctrine." *Mitchell v. Pettigrew,* 65 N.M. 137, 333 P.2d 879 (1958) did, but it was not cited in *Neff,* not discussed in Judge Lopez' opinion and unnoticed by the parties. In support of its opinion, *Mitchell* adopted the "Rescue Doctrine" as stated in Annot., *Liability for death of, or injury to one seeking to rescue another,* 19 A.L.R. 4, 5 (1922). The basis of this Annotation is the *Wagner* case quoted and relied upon by Judge Lopez. *Mitchell* quoted the following rule from the Annotation:

"The rule is well settled that one who sees a person in imminent and serious peril through the negligence of another cannot be charged with *contributory negligence,* as a matter of law, in risking his own life, or serious injury, in attempting to effect a rescue, *provided the attempt is not recklessly or rashly made. * * ** [T]he fact that the injury is sustained in attempting to save human life is a proper element for consideration upon the question of *contributory negligence,* and * * the latter question ordinarily is one for the jury and not for the court." [Emphasis added]. [Id. 65 N.M. 141, 333 P.2d 879.]

Contributory negligence as an absolute defense disappeared with the adoption of comparative negligence. *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981). *Mitchell* no longer correctly states the "Rescue Doctrine" rule and is not controlling. The "Rescue Doctrine" takes on a different form when applied to the rule of comparative negligence. *Ryder Truck Rental, Inc. v. Korte,* 357 So.2d 228 (Fla.App.1978). *Ryder Truck* said:

We therefore hold that when the plaintiff in performing a rescue is himself negligent, he should recover only that portion of the entire damages sustained by him as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant. In the present case the trial court specifically found that "the plaintiff was injured while performing a humanitarian act in a reasonable manner." The record supports the finding that the plaintiff was not negligent; therefore it was not necessary to apportion his damages. [Id. 230].

To "act in a reasonable manner" does not mean that plaintiff acted within the standard of ordinary care. The rule of ordinary care does not apply to plaintiff where he acts to save another from imminent peril brought about by the negligence of defendant. The legal standard of care which a party is required to exercise during a rescue attempt must be lowered. Such words as "rash," "reckless" and "wanton" are used by courts in order to limit a rescuer's right to intentionally expose himself to a known risk of danger. This rationale is based upon the fact that the rescue doctrine is one that envelopes a noble impulse which impels a man to deeds of heroism by rushing into danger to help his fellow man. He is negligent if he acted rashly, recklessly or wantonly.

*Hatch v. Globe Laundry,* 132 Me. 379, 171 A. 387, 392 (1934) said:

The overwhelming weight of authority is that one attempting to rescue another under such circumstances is not, by exposing himself to imminent danger, to be held negligent unless his conduct is to be regarded as rash or reckless.

In New York where Justice Cardozo initiated this rule in the *Wagner* case, to constitute contributory negligence, decedent's actions on a highway in aid of another driver in an emergency situation would have to be found rash and wanton. *Johnson v. Hickson,* 43 N.Y.2d 906, 403 N.Y.S.2d 722, 374 N.E.2d 616 (1978).

Under the doctrine of comparative negligence, to find that plaintiff was negligent under the "Rescue Doctrine," the trial court would determine whether plaintiff acted in a reasonable manner or whether he was rash, reckless or wanton in the attempt to rescue another. In the instant case, the negligence of defendants is not questioned and plaintiff's attempt to rescue was in a reasonable manner as a matter of law.

Judge Lopez quotes at length the "Rescue Doctrine" as stated in 65A C.J.S. *Negligence,* § 124 (1966). *Mitchell* is cited as authority. This quotation should not be used to formulate the "Rescue Doctrine" in New Mexico. Generally, a rule of law purportedly established by a host of cases cited in support thereof, ordinarily, should not be summarily adopted unless the cases cited do not deviate from the rule, are uniform in language and accurately state the law. The host of cases cited in C.J.S., *supra,* 19 A.L.R. 4, supplemented in 15 A.L.R. 189, superceded in part in 166 A.L.R. 752 and 4 A.L.R.3d 558 will reflect emotional language ofttimes that make curlicues of the "Rescue Doctrine." The result is that "negligence" of the rescuer takes on a different hue than that commonly denominated. In fact, negligence of the rescuer disappears. For example, *Walters v. Denver Consol. Electric Light Co.,* 12 Colo.App. 145, 54 P. 960, 962, 5 Am.Negl.Rep. 5 (1898) said:

> The instincts of a mother, when she sees her child in distress, will lead her to rush headlong to its rescue, without stopping to count the cost or measure the risk which she is incurring; and to say that an act to which her affection irresistibly impelled her should be charged against her as something imprudent and unnecessary would be to shock a sentiment which is as universal as mankind. The law is not the creature of cold-blooded, merciless logic, and its inherent justice and humanity will never for a moment permit the act of a mother in saving her offspring, no matter how desparate it may have been, to be imputed to her as negligence, or at any time, or in any manner, used to her detriment.

*Scott v. John H. Hampshire, Inc.,* 246 Md. 171, 227 A.2d 751 (1967) held that the defenses of contributory negligence and assumption of risk were inapplicable under the "Rescue Doctrine." It said:

> [N]either defense is applicable in this case where the conduct of the defendant appears to have created such a situation as to justify if not to compel the plaintiff to undergo the risk of being injured in order to warn others and avert their harm. [Id. 753].

Cited as authority is Restatement (Second) Torts § 472, ante.

The Restatement of Torts is persuasive authority entitled to great weight. *Moore v. Burn Const. Co.,* 98 N.M. 190, 646 P.2d 1254 (Ct.App.1982). Restatement (Second) Torts § 472 (1965) reads in pertinent part:

> It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save * * * a third person * * from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.

If the word "contributory" were omitted, the rule would be applicable under the doctrine of comparative negligence. Judge Lopez cited as authority *Calvert v. Ourum,* 40 Or.App. 511, 595 P.2d 1264 (1979). *Calvert* refused to follow § 472 as stated in an instruction because it implied in part that plaintiff would not be held to the standard of reasonable care if plaintiff was engaged in an endeavor to save human life. An instruction on common law negligence was approved. *Calvert* is erroneous. Under the "Rescue Doctrine," a difference should exist between an unreasonable effort of plaintiff to rescue and a reasonable person standard effort to rescue. The reasonable man standard is an anachronism. *See, Anderson v. Welsh,* 86 N.M. 767, 527 P.2d 1079 (Ct.App. 1974). Under the "Rescue Doctrine," reasonable minds do not determine whether imminent peril, danger, emergency, or the extent of the risk exist or whether plaintiff acted reasonably under the circumstances. The reaction of the mind varies with each person confronted with this perilous situation. The standard is subjective, ingrained in the conduct of plaintiff. *Marks v. Wagner,* 52 Ohio App.2d 320, 6 Ohio Ops.3d 360, 370 N.E.2d 480, 484 (1977) said:

> [T]he issue of whether the proposed rescuer is thereafter contributorily [sic] negligent in attempting a rescue is determined, not by a consideration of the circumstance of the actual peril at that time of the person to be rescued, *but by a consideration of the mental state of the*

*rescuer, as to what he reasonably believed from the facts known to him* the peril of the person to be rescued to be at that time.  [Emphasis added.]

*See,* dissenting opinion in an equally divided court.  *Furby v. Novak,* 224 Pa.Super. 44, 302 A.2d 507 (1973).

Section 472 is directed to the conduct of plaintiff, not to any objective standard of care.  Otherwise, rash and reckless conduct would disappear from the meaning of negligence.

To "act in a reasonable manner" as stated in *Ryder Truck, supra,* is the rule stated in § 472.

*Lane v. Neumann,* 211 Neb. 97, 317 N.W.2d 779 (1982), cited by Judge Lopez, followed § 472.  It would be applicable if contributory negligence as a defense were not present.  *Solgaard v. Guy F. Atkinson Company,* 6 Cal.3d 361, 99 Cal.Rptr. 29, 491 P.2d 821 (1971), cited by Judge Lopez, absent the defense of contributory negligence, adopts the rash or reckless rule discussed *supra.*  The court said:

> Although its precise limits are not yet fully developed, *the rescue doctrine varies the ordinary rules of negligence* in two important respects * * * (2) it substantially restricts the availability of the defense of contributory negligence *by requiring defendant to prove that the rescuer acted rashly or recklessly under the circumstances.*  [Emphasis added.]  [Id. 99 Cal.Rptr. at 33, 491 P.2d at 825].

Under the rule of comparative negligence, the "Rescue Doctrine" can be stated in this fashion in the instant case in one of two ways:

> (1) Plaintiff who sees a person in imminent and serious peril through the negligence of defendant cannot be charged with negligence in risking his own life or serious injury in attempting to effect a rescue provided the attempt of plaintiff to rescue is not recklessly or rashly made.  If defendant proves that the plaintiff acted rashly or recklessly under the circumstances, plaintiff is negligent.

or

> (2) It is not negligence for a plaintiff to expose himself to danger in an effort to save a third person from harm unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.  If defendant proves that plaintiff's effort to save a person from harm was unreasonable or the plaintiff acted unreasonably in the course of it, plaintiff is negligent.

There are other aspects of the "Rescue Doctrine" which affect the result to be determined, but none are applicable to this case.