814 P.2d 94

**Roane GOVICH, Daniel Govich and American National Fire Insurance Co., Plaintiffs–Appellants and Cross–Appellees,**

v.

**NORTH AMERICAN SYSTEMS, INC. and Ark–Les Switch Company, Defendants–Appellees and Cross–Appellants.**

No. 19346.

Supreme Court of New Mexico.

June 26, 1991.

Rehearing Denied July 22, 1991.

**228**

Samantha Dunning, Santa Fe, for appellants.

Lenssen & Mandel John L. Lenssen, Santa Fe, for appellee North American Systems.

Civerolo, Hansen & Wolf R. Galen Reimer, Carl J. Butkus, Albuquerque, for appellee ARK–Les Switch Co.

## OPINION

RANSOM, Justice.

Roane Govich and her adult son, Daniel Govich, appeal from the district court's order dismissing their personal injury claims against North American Systems, Inc. ("Mr. Coffee") and Ark–Les Switch Company. We are called upon to address novel questions concerning the rescue doctrine in the context of comparative negligence. We reverse.

Daniel is hearing impaired. He is assisted by a dog specially trained to alert him to routine sounds of daily life, such as a ringing telephone or a knock at the door. On the evening of November 23, 1983, Daniel and Roane dined at a Santa Fe restaurant. Daniel was not accompanied by his dog. Upon returning to their home after dinner, they noticed smoke issuing from the house. Daniel opened a door to the house, and smoke billowed forth. Roane ran to a neighbor's house to call the fire department.

Daniel's dog was inside the burning house. After first calling his dog from outside the house, Daniel entered the house in repeated, but vain, attempts to rescue the dog. Daniel testified that "at the time of the rescue attempt of my dog I was under severe emotional distress due to the possibility of losing my dog and not knowing if all my possessions in the house would be destroyed." Roane returned, and upon seeing her son enter the burning house, made several entrances attempting to restrain Daniel. She testified that Dan-

iel "was like a person who had lost his sanity. He could not understand the danger he was in." The dog perished, and Daniel and Roane were injured in the fire.

On January 22, 1985, the Goviches sued Mr. Coffee, alleging the fire was caused by a defective coffee maker. Ark–Les, the maker of an electrical component in the coffee maker, was named a defendant by amended complaint. Based upon theories of strict products liability, negligence, and breach of implied or express warranties, the Goviches sought damages for personal injuries, emotional distress, and lost wages. American National Fire Insurance Company, as the Goviches' subrogated insurer, sought recovery for damages to personal and real property.

Mr. Coffee and Ark–Les moved for partial summary judgment arguing that the Goviches were barred from recovery as a matter of law. The Goviches responded that summary judgment was precluded by the rescue doctrine and bystander recovery for negligent infliction of emotional distress. The rescue doctrine was raised in relation to both Roane and Daniel. The bystander theory has been abandoned on appeal.

On May 10, 1990, the district court[1] entered an order granting partial summary judgment in favor of Mr. Coffee and Ark–Les, dismissing the Goviches' personal injury claims. The court entered the following findings of fact:

7. The personal injuries as well as the emotional injuries and lost income of plaintiffs Roane Govich or Daniel Govich resulted entirely from their entry into the burning house.

8. The actions of plaintiff Daniel Govich in entering a burning home to rescue a dog [are] unreasonable conduct as a matter of law and he may not recover damages for personal injuries, lost income, or emotional damages that he may have suffered.

---

1. The defendants' motions were heard and granted orally by Judge Herrera on December 7, 1989. Before entering a written order, Judge Herrera recused himself, and the case was reassigned to Judge Encinias. Judge Encinias, relying upon the record from the earlier hearing, entered the order for partial summary judgment that is now before us.

9. The actions of plaintiff Roane Govich in entering the burning home to retrieve her son were plainly occasioned by the unreasonable conduct of her son and not any act, omission or conduct of defendants and she is barred to collect damages for personal injuries, lost income, or emotional damages that she may have suffered.

10. There are no genuine issues of material fact as to causation for personal injuries, emotional distress, and lost income and defendants are entitled to summary judgment as a matter of law.

Accordingly, the court adjudged that:

1. The claims for personal injuries, emotional distress and lost income by plaintiffs, Roane Govich and Daniel Govich, be and the same are hereby dismissed.

2. The only claims remaining to be tried relate to liability of defendants to plaintiffs as to their claims for damages to the real and personal property destroyed or damaged in the fire.

On June 8 the Goviches filed notice of appeal from the May 10 order. On June 12 the district court denied defendants' motion to compel answers to interrogatories from the Goviches. In that order the court stated that the order for partial summary judgment had dismissed all the Goviches' claims. The court then dismissed the Goviches from the suit. On July 10 the Goviches filed notice of appeal from the June 12 order. Both appeals were taken to the court of appeals. The court of appeals transferred the action to this Court pursuant to NMSA 1978, Section 34–5–10 (Repl. Pamp.1990) (transfer to proper court by the court in which appeal is filed; a final determination of jurisdiction).

*Jurisdiction.* Ark–Les challenges our jurisdiction to hear this appeal, first arguing the partial summary judgment order is not a final order and, thus, cannot form the proper predicate for appeal. Second, citing SCRA 1986, 12–202(B) (notice of appeal

shall attach the judgment or order from which appeal is taken) and cases construing the rule, Ark–Les maintains that the second notice of appeal conferred jurisdiction upon this Court only over the order attached to that notice. While we agree with Ark–Les that the partial summary judgment order was not appealable, we hold that we have jurisdiction over this appeal to review all issues properly preserved below arising from the partial summary judgment order.

The partial summary judgment only dismissed the Goviches' claims for personal injuries, emotional distress, and lost income. It provided that "[t]he only claims remaining to be tried relate to liability of defendants to plaintiffs as to their claims for damages to the real and personal property destroyed by the fire." Rule 54(C) provides that, in the absence of an express determination by the court that there is no just reason for delay, an adjudication of fewer than all the claims "shall not terminate the action as to any of the claims and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." SCRA 1986, 1–054(C)(1). By its terms, the partial summary judgment order left unresolved the Goviches' property claims [2] and, thus, the May 10 order cannot be a final order from which appeal properly may be taken. *Aetna Casualty & Sur. Co. v. Miles,* 80 N.M. 237, 453 P.2d 757 (1969). Accordingly, the June 8 notice of appeal was ineffective to perfect the Goviches' appeal.

■ The Goviches timely filed notice of appeal from the June 12 order dismissing them from the suit. Because that order was a final order with respect to the Goviches, their appeal was perfected when the notice was filed. Nonetheless, citing *Mabrey v. Mobil Oil Corp.,* 84 N.M. 272, 502 P.2d 297 (Ct.App.), *cert. denied,* 83 N.M.

---

**2.** The Goviches' property claims had been subrogated to American National. Thus, despite language in the May 10 order to the contrary, the Goviches arguably were without actionable claims against defendants after entry of partial summary judgment. Nonetheless, because the

Goviches approved the order below, we do not review its form and effect. *Pizza Hut of Santa Fe, Inc. v. Branch,* 89 N.M. 325, 328, 552 P.2d 227, 230 (Ct.App.1976) (party waives appellate review of order by failing to object to form of modified order in court below).

740, 497 P.2d 742 (1972), Ark–Les argues that because the second notice of appeal mentioned and attached only the order denying defendants' motion to compel, that notice fails to confer jurisdiction over the partial summary judgment order. We disagree.

■ While we recently held that appellate rules for the time and place of filing a notice of appeal govern the proper invocation of our jurisdiction, *Lowe v. Bloom*, 110 N.M. 555, 556, 798 P.2d 156, 157 (1990), we also have stated the policy of facilitating the right of appeal by liberally construing technical deficiencies in a notice of appeal otherwise satisfying the time and place of filing requirements. *Marquez v. Gomez*, 111 N.M. 14, 801 P.2d 84 (1990). The constitutional mandate that "an aggrieved party shall have the absolute right to one appeal" evinces the strong policy in this state that courts should facilitate, rather than hinder, the right to one appeal. *See* N.M. Const. art. VI, § 2. Justice Montgomery explored this concept eloquently in his dissent to *Lowe*. As a matter of terminology, we properly should refer hereafter to the mandatory sections of our rules of appellate practice as "mandatory" and discard the term "jurisdictional" that has been used over time by most federal and state courts to describe a mandatory precondition to the exercise of jurisdiction. *See Mann v. Lynaugh*, 840 F.2d 1194, 1197 (5th Cir.1988) (notice requirement under federal rule 4(a) is a mandatory precondition to the exercise of appellate jurisdiction). We strictly adhere to jurisdictional subject matter limits on this Court and we cannot exercise our discretion with respect to such questions. Though we have stated in categorical terms that we cannot entertain an appeal when the notice does not satisfy the requirements for time and place of filing, what we in essence have held is simply that, with respect to the mandates for time and place of filing the notice of appeal, we decline to exercise discretion to excuse or justify any improper attempt to invoke our jurisdiction. It is probably imprecise to say we cannot exercise such discretion.

Once notice of appeal has been timely filed, the specificity requirements of Rule 12–202(B) (content of notice) are meant to inform the appellee and the court of the scope of the appellate proceeding by delineating the ruling from which appeal is taken. However, under Rule 12–312(C) an appeal timely filed is not to be dismissed for technical violations of Rule 12–202 that do not affect the substantive rights of the parties. The policies in this state, and the purpose of the rule, are vindicated if the intent to appeal a specific judgment fairly can be inferred from the notice of appeal and if the appellee is not prejudiced by any mistake. This long has been the position in this state and in the federal courts. *Baker v. Sojka*, 74 N.M. 587, 588–89, 396 P.2d 195, 196 (1964); *Nevarez v. State Armory Bd.*, 84 N.M. 262, 264, 502 P.2d 287, 289 (1972). *See generally* 9 J.W. Moore, B.J. Ward, & J.D. Lucas, *Moore's Federal Practice* ¶ 203.17[2] (2d ed. 1991) (discussing federal requirement).

Upon analysis of the record, we are satisfied that the Goviches' intent to appeal the May 10 order fairly can be inferred from their submissions and that Ark–Les was not prejudiced by any mistake. Nothing in the record suggests Ark–Les was misled, nor has Ark–Les so claimed. The intent to appeal the order was apparent from the filing of a premature notice of appeal from the partial summary judgment order. Additionally, the June 12 order from which the second notice of appeal was taken refers expressly to the May 10 order. Under these circumstances we will treat the Goviches' second notice of appeal as the functional equivalent of an appeal from the partial summary judgment order and the order of dismissal. *See Nevarez*, 84 N.M. at 264, 502 P.2d at 289 (notice of appeal from final judgment was effective to invoke review of summary judgment where final judgment in its operative provisions "confirmed" summary judgment); *Munoz v. Small Business Admin.*, 644 F.2d 1361, 1364 (9th Cir.1981) (appeal from final judgment draws in question all earlier nonfinal orders and rulings that produced judgment).

*Rescue doctrine.* The issue in the briefs before this Court is whether the rescue doctrine is applicable under comparative negligence and, if so, whether it may be relied upon by the Goviches to establish a genuine issue of material fact that would preclude summary judgment on their personal injury claims.[3]

The paradigm rescue case is *Wagner v. International Railway*, 232 N.Y. 176, 133 N.E. 437 (1921). In *Wagner*, plaintiff rescuer was seriously injured in an attempt to rescue his cousin who had been thrown from a moving tram as a result of defendant railway company's negligence. The plaintiff lost at trial, and an intermediate appellate court directed judgment on the verdict for defendant. The court of appeals reversed, rejecting the railway's primary arguments (1) that plaintiff's rescue attempt was outside the chain of causation, and (2) that plaintiff was contributorily negligent. As Justice Benjamin Cardozo declaimed with memorable prose:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer * * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had.

*Id.* at 180, 133 N.E. at 437–38. The *Wagner* rule has gained universal acceptance. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 44, at 307–08 (5th ed. 1984) [herein-

after *Prosser & Keeton*] (collecting cases); Annotation, *Liability for Death of, or Injury to, One Seeking to Rescue Another*, 158 A.L.R. 189 (1945) (same). New Mexico has recognized the doctrine, but has not examined the effect, if any, of the introduction of comparative negligence on the doctrine. *See, e.g., Mitchell v. Pettigrew*, 65 N.M. 137, 333 P.2d 879 (1958); *Padilla v. Hooks Int'l, Inc.*, 99 N.M. 121, 654 P.2d 574 (Ct.App.), *cert. denied*, 99 N.M. 148, 655 P.2d 160 (1982); *Neff v. Woodmen of the World Life Ins. Soc.*, 87 N.M. 68, 529 P.2d 294 (Ct.App.), *cert. denied*, 87 N.M. 48, 529 P.2d 274 (1974).

Several jurisdictions have considered and reaffirmed the vitality of the rescue doctrine under their respective comparative negligence regimes. *Ryder Truck Rental, Inc. v. Korte*, 357 So.2d 228 (Fla.Dist.Ct. App.1978), was the first case to undertake extensive analysis. In *Korte*, the court began by articulating the purposes served by the rescue doctrine: "[T]he rescue doctrine serves a dual purpose: first, to establish the causal connection between the defendant's negligence and the plaintiff's injury, and second, to eliminate the absolute defense of contributory negligence." *Id.* at 230. The court then observed that while the rescue doctrine no longer was required under comparative negligence analysis to insulate the rescuer from the defense of contributory negligence, the doctrine nonetheless was essential to establish the causal nexus between the defendant's negligence and the rescuer's injuries:

> [T]he rescue doctrine is still applicable to establish that the defendant's negligence was the proximate cause of the plaintiff's injury. A basic principle of the doctrine is that where the defendant has created a situation of peril for another the defendant will be held in law to have

---

**3.** Ark–Les submits this appeal should not be heard on its merits because the Goviches never pleaded the rescue doctrine in their first amended complaint. It appears from the record that the Goviches raised the rescue doctrine in response to defendants' motion for partial summary judgment. Our first response is that under SCRA 1986, 1–015(B), the pleadings may be deemed amended to conform to the evidence on which the court made specific findings concern-

ing the rescue doctrine (findings 8 and 9). *Moya v. Fidelity & Casualty Co. of N.Y.,* 75 N.M. 462, 406 P.2d 173 (1965) (findings and conclusions may determine whether pleadings will be deemed amended). Second, as discussed below in the body of this opinion, we think the rescue doctrine is but an aspect of our rules of proximate cause under comparative fault and as such need not be specifically pleaded.

caused the peril not only to the victim but also to his rescuer, and so to have caused any injury suffered by the rescuer in his rescue attempt.

*Id.* at 230 (citing Tiley, *The Rescue Principle*, 30 Mod.L.Rev. 25 (1967) (positing that the rescue doctrine is a causation doctrine)).

*Korte*'s dual purpose analysis of the rescue doctrine has been widely accepted by courts that have considered the effect of the adoption of comparative negligence. *See, e.g., Zimny v. Cooper–Jarrett, Inc.,* 8 Conn.App. 407, 420, 513 A.2d 1235, 1243 (causal aspect of rescue doctrine remains viable under comparative negligence), *cert. denied,* 201 Conn. 811, 516 A.2d 887 (1986); *Solomon v. Shuell,* 435 Mich. 104, 135, 457 N.W.2d 669, 683 (1990) (same); *Sweetman v. State Highway Dep't,* 137 Mich.App. 14, 26, 357 N.W.2d 783, 789 (1984) (same); *Pachesky v. Getz,* 353 Pa.Super. 505, 519 n. 8, 510 A.2d 776, 783 n. 8 (1986) (same).

Rather than isolating the purposes of the doctrine, *Korte* and its progeny have identified the means employed to implement the doctrine's purpose. The rescue doctrine, in essence, reflects the assumption that rescue is a commendable human urge to be encouraged, not penalized. To give legal cognizance to that assumption, courts, under the guise of the rescue doctrine, have tinkered with traditional tort concepts. The doctrine has been employed: (1) to establish the duty owed the rescuer by the person creating the peril, *see Prosser & Keeton, supra,* § 44, at 308; (2) to relieve the plaintiff of the defenses of contributory negligence and assumption of the risk, otherwise available to the person creating the initial peril, *see id.* § 68, at 491; Goodhart, *Rescue and Voluntary Assumption of Risk,* 5 Camb.L.J. 192 (1934); and (3) to help establish the causal nexus between the defendant's negligence and the rescuer's injury. *See* Tiley, *supra.*

Broadly stated, the issue we face is whether the policies reflected in the rescue doctrine are vindicated by application of our rules of comparative negligence, or whether those policies yet require judicial manipulation of traditional rules of duty and causation. Upon close analysis of causation rules under comparative negligence, we conclude the doctrine now serves only to establish and identify the duty owed the rescuer.

 Whether the person or entity creating the peril owes a duty to the rescuer is a matter of law to be decided by the court. *Calkins v. Cox Estates,* 110 N.M. 59, 62, 792 P.2d 36, 39 (1990). The person or entity creating the peril owes an independent duty of care to the rescuer, which arises from a policy, deeply imbedded in our social fabric, that fosters rescue attempts. *See, e.g., Prosser & Keeton, supra,* § 44, at p. 308. So far as the rescue doctrine can be understood as shorthand for a public policy, reflected in the law, imposing an independent duty of care owed a rescuer by persons creating unreasonable risks of harm to others, we think that facet of the doctrine remains vital under New Mexico's comparative negligence regime.

 The dispositive issue, then, is whether we establish, as in *Korte,* that the negligence precipitating the rescue is in law the proximate cause of the rescuer's injuries. We do not. Rather than to rely on the rescue doctrine's fictive notions of causation as articulated in *Korte,* it is more direct to rely upon the jury's allocation of fault under traditional rules of proximate and independent intervening causation.

In New Mexico, a proximate cause of an injury is an event "which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." SCRA 1986, 13–305 (uniform civil jury instruction); *Thompson v. Anderman,* 59 N.M. 400, 411, 285 P.2d 507, 514 (1955). In turn, an independent intervening cause is an event that "interrupts and turns aside a course of events and produces that which was not foreseeable as a result of an earlier act or omission." SCRA 1986, 13–306 (uniform civil jury instruction); *Thompson,* 59 N.M. at 411–12, 285 P.2d at 514.

 The precise legal grounds upon which the trial court granted summary

judgment are difficult to ascertain. With respect to Daniel, the trial court appears to have couched its findings on the determinative issue in terms of "unreasonable conduct as a matter of law." If, as Ark–Les seems to acknowledge in its brief, the dispositive issue ruled upon by the court was proximate cause, not comparative negligence, then the trial court erred. Questions of proximate cause and independent intervening cause are for the jury, except in rare cases in which reasonable minds cannot differ. *See New Mexico State Highway Ass'n v. Van Dyke*, 90 N.M. 357, 360, 563 P.2d 1150, 1153 (1977). In particular, the issue whether Daniel's entry into the burning house to rescue his dog constituted an independent intervening cause of his injuries cannot be resolved as a matter of law. The foreseeability of Daniel's actions, in the context of a superseding intervening cause, is an issue of fact. *See Calkins*, 110 N.M. at 66, 792 P.2d at 43 (Ransom, J., dissenting).

■ On the other hand, the terms employed by the trial court might be construed to relate to the presence of negligent conduct. If the trial court meant that the conduct of Daniel was so unreasonable as to preclude apportionment of fault to the original wrongdoer, such action on the part of the court constituted an unwarranted usurpation of the jury's factfinding function under comparative negligence. If the trial court was applying a "rash or reckless" threshold for the existence of a duty,[4] we reject that standard. New Mexico courts never have recognized degrees of negligence. Rather, the standard in all cases has been "ordinary care under the circumstances." *Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 729, 688 P.2d 333, 339 (Ct.App.), *cert. quashed*, 101 N.M. 555, 685 P.2d 963 (1984); SCRA 1986, 13–1603 (uniform civil jury instruction defining ordinary care); *see also Scott v. Rizzo*, 96 N.M. 682, 687, 634 P.2d 1234, 1239 (1981) (abolishing distinction between ordinary and gross negligence). Our jury instructions adequately permit the jury to consider the facts and circumstances surrounding the rescue and to measure those acts in accordance with the standards of reasonableness and ordinary care.

■ Citing cases from other jurisdictions, Ark–Les argues that rescue of *property* is unforeseeable as a matter of law. Again, we find no compelling reason to so hold. Rather, whether rescue of property is unforeseeable is a question for the jury. We decline to rule there can be no duty owed to one who is summoned to rescue property by reason of danger occasioned by the negligence of another.

■ With respect to the claims of Daniel's mother, Roane, Ark–Les acknowledges that a rescuer may be rescued. *See, e.g., Grigsby v. Coastal Marine Serv. of Tex., Inc.*, 412 F.2d 1011, 1021–22 (5th Cir.1969), *cert. denied*, 396 U.S. 1033 (1970). Without citation to authority, Ark–Les argues, however, that in the event the jury finds that Daniel cannot recover, Roane must be barred as well. We fail to see the merit in this argument. The tortfeasor owes an independent duty to any foreseeable rescuer. Whether the initial rescuer, or any subsequent rescuer, can recover depends, as we have explained above, upon the jury's determination of proximate cause.

We are aware of no public policy that would compel us to remove from the jury

4. The cases are divided on the appropriate standard of care to which rescuers are held under comparative negligence rules. At least one federal court and one state have retained the "rash or reckless" standard operative prior to the adoption of comparative negligence. *Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1088–89 (4th Cir.1985); *Allison v. Sverdrup & Parcel & Assoc.*, 738 S.W.2d 440, 454 (Mo.Ct. App.1987). The majority of comparative negligence jurisdictions, however, have shifted to a "reasonableness" standard. *See, e.g., Zimny*, 8 Conn.App. at 420, 513 A.2d at 1243; *Korte*, 357 So.2d at 230; *Sweetman*, 137 Mich.App. at 26–7, 357 N.W.2d at 789; *Pachesky*, 353 Pa.Super. at 519, 510 A.2d at 783; *Cords v. Anderson*, 80 Wis.2d 525, 547, 259 N.W.2d 672, 683 (1977).

questions of negligence and proximate cause. Accordingly, we reverse the order granting partial summary judgment against Roane and Daniel Govich and remand for trial on the merits. Issues raised on the cross-appeal are rendered moot.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.